**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

HOLLY WYSE and KEVIN WYSE,

                        Plaintiffs,

v.

EDWARD F. VALDESPINO and NAMAN,
HOWELL, SMITH & LEE, PLLC

                        Defendants.

**JURY TRIAL DEMANDED**

CIVIL ACTION NO:
5:26-cv-02973

## PLAINTIFFS' VERIFIED AMENDED COMPLAINT

COMES NOW, Plaintiffs HOLLY WYSE and KEVIN WYSE, by and through their attorneys, Hodgson Russ LLP, and files this Verified Amended Complaint against Defendants EDWARD VALDESPINO and NAMAN, HOWELL, SMITH & LEE, PLLC, and respectfully shows the Court as follows:

### INTRODUCTION

1. For more than forty years, Plaintiffs Kevin Wyse, 67, and his wife Holly Wyse, 65, ("the Wyses") have worked hard and saved their money. The couple started a business together, Wyse Properties, which builds and renovates affordable rental housing in Western New York. With this effort, they supported two children who are now starting families of their own. Along the way, the Wyses saved money from their business for their retirement and their children's future.

2. But in December 2025, a large chunk of this savings vanished when they fell prey to a Ponzi scheme engineered by Defendant Edward Valdespino ("Attorney Valdespino"), a Texas

lawyer, who works at the law firm, Defendant Naman, Howell, Smith & Lee, PLLC ("Naman Howell"). Attorney Valdespino portrayed himself as an escrow agent responsible for holding the Wyses' money if they invested $1 Million in a program called the "Private Placement Program." Attorney Valdespino associated himself with Naman Howell, a Texas firm of more than 100 lawyers with a 110-year history.  Attorney Valdespino used his Naman Howell email address to communicate with the Wyses and listed the firm's address on contracts for the scheme. Naman Howell is fully aware, as detailed below, of Valdespino's Ponzi scheme ventures and permits him to act as its agent duping innocent individuals into investing in this Ponzi scheme, all while unethically using multiple Interest on Lawyers' Trust Accounts ("IOLTA accounts").

3.      At the urging of Attorney Valdespino, on December 29, 2025, the Wyses transferred $1 Million into an IOLTA account where he purported to hold the money so Finnexo Investments Ltd. could access it as part of a "buy-sell private placement program." Attorney Valdespino and his co-conspirators kept promising the Wyses that their money would earn "10X" or "ten times" the return on $1 Million, pledging the couple would see $10 Million within a six-week "trading cycle."

4.      Soon after transferring the money to the IOLTA account, in January 2026, the Wyses became concerned about their investment in the private placement program. They worried the program was not a legitimate operation. They were right. The "program" is little more than an elaborate heist perpetrated by Attorney Valdespino and his co-conspirators.

5.      The next three months involved a series of desperate calls and emails from the Wyses who begged Attorney Valdespino for the return of their savings. Attorney Valdespino and his co-conspirators kept stringing the Wyses along, promising the couple that their money would be invested soon and they would see a return on their cash. Nothing materialized.

6.    In April 2026, the Wyses, through counsel, contacted both Attorney Valdespino and Naman Howell requesting an immediate return of their funds. To date, no funds have been returned.

7.    Since then, the Wyses have learned that Attorney Valdespino and Naman Howell have both been the subject of prior lawsuits for this same type of scheme. In at least two of those instances, the lawsuits were quietly settled by returning the funds. Despite being well aware of the unethical and continuing nature of this ruse, Naman Howell continued working with Attorney Valdespino and allows him to use its name and reputation as leverage for convincing innocent and unsuspecting individuals like the Wyses to hand over their life savings.

8.    Distressed and scared, the Wyses now turn to this Court for help. This lawsuit is the Wyses' last chance to preserve what is left of their savings in the hands of Attorney Valdespino and his co-conspirators. Without judicial intervention, the couple risk losing $1 Million and will be unable to recoup any of their hard-earned savings.

## PARTIES

9.    Plaintiffs, HOLLY WYSE and KEVIN WYSE are individuals residing in Erie County, State of New York, who may be served with notice through their attorneys, Hodgson Russ LLP, at 140 Pearl Street, Suite 100, Buffalo, New York 14202.

10.    Defendant EDWARD F. VALDESPINO is an individual residing in Bexar County and may be served at 8000 IH-10 West, Suite 1500, San Antonio, Texas 78230, or wherever he may be found.

11.    Defendant NAMAN, HOWELL, SMITH & LEE, PLLC is a Texas limited liability company with a principal place of business at 400 Austin Avenue, Suite 800, Waco, Texas 76701.

It may be served through its registered agent for service of process, Kyle G. Knas, 400 Austin Avenue, Waco, Texas 76701. Naman Howell also has offices in San Antonio, Texas from which certain Naman Howell officers and Attorney Valdespino work.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction over claims in this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000.00 and is between citizens of different states. Plaintiffs, the Wyses are citizens of the State of New York. Defendant Attorney Valdespino is a citizen of the State of Texas. Defendant Naman Howell is a professional limited liability company and is a citizen of Texas. Upon information and belief, Naman Howell has 56 members, all of whom are individual people and Texas citizens. *See MidCap Media Fin., L.L.C v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019). **Exhibit 13A** is the most recent Texas Franchise Tax Public Information Report for Naman Howell listing its members as of 2017. **Exhibit 13B** is a chart identifying Naman Howell's individual members and their domicile as listed on the law firm's website and additional sources of public information. All 56 individual members of Naman Howell are domiciled in Texas and are citizens of Texas. Complete diversity of citizenship exists.

13.     This Court has personal jurisdiction over Defendants because Defendants are domiciled in and conduct business within the State of Texas and within the Western District of Texas, and because the acts and omissions giving rise to Plaintiffs' claims occurred substantially within this District.

14.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because one or more Defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2)

4

because all or substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this District, and in particular, San Antonio.

## BACKGROUND FACTS[1]

15.     A couple of more than 46 years, Mr. and Mrs. Wyse own and operate Wyse Properties, a family-owned development and property management company in Erie County, New York. The Wyses founded Wyse Properties in 1984, shortly after they married. They learned the construction trades from retiring craftsmen, and they put that knowledge to work, brick by brick, year by year, development by development. Over more than 40 years, the Wyses built a portfolio of residential rental properties throughout Buffalo, New York. The Wyses primarily construct homes, retain rental properties, and rehabilitate existing homes near the State University of New York at Buffalo. Wyse Properties provides safe, low-maintenance residential apartments and townhouses to families and students who call that community home.

16.     Wyse Properties is not merely a business. It is a legacy—one that Holly and Kevin Wyse are building for generations of their family. Their son and daughter both work alongside them. Everything the Wyses have built, every decision they have rendered, is made with their family in mind.

17.     In 2025, a mutual acquaintance introduced the Wyses to Paul Greenwood, a resident of nearby Ontario, Canada, who claimed to own and operate Lark Renewable Energy Inc. ("Lark Renewable"). Buffalo, New York, where the Wyses live, sits on the Canadian border. It is common for Canadians and Americans to befriend one another and conduct business across the international border in the Great Lakes region.

---

[1] For the Court's benefit, the Wyses have attached a timeline of key events hereto as an Appendix.

18.    Lark Renewable claims to be a renewable energy business. In reality, the Wyses only recently discovered that Lark Renewable is just a shell company. Lark Renewable has no apparent commercial headquarters or legitimate operational footprint—the corporate business park Lark Renewable lists in paperwork as its address is permanently closed, according to Google Maps. Mr. Greenwood now operates the sham company from his house in a Toronto, Ontario suburb.



*Google Maps Photo of Mr. Greenwood's house in Ontario.*

19.    On December 8, 2025, the Wyses entered into a Business Agreement, attached hereto as **Exhibit 1**, with Lark Renewable. Under that agreement, the Wyses agreed to transfer $1 Million into an IOLTA account managed by Attorney Valdespino.

20.    Lark Renewable represented to the Wyses that their funds would be used to participate in a purported "Private Placement Program" ("the Program"), claiming the funds would

be put into discrete "trade cycles" lasting up to four months. Mr. Greenwood told the Wyses that an investor would receive a $1 Million dividend at the conclusion of each trade cycle and that, after three cycles, they would recover their entire $1 Million principal.

21.    In a call with Plaintiffs, Attorney Valdespino told the Wyses that he has participated in multiple programs like this, pointing to his success at Naman Howell, and pressuring them to sign up for the program. Attorney Valdespino told the Wyses during this same call that of the many programs he has participated in, "this is the best program I have ever seen."

22.    Shortly thereafter, the Wyses received a document entitled "Combined Escrow Agreement and Deed of Agreement" (the "Agreement"), attached hereto as **Exhibit 2**. The fully executed Agreement expressly identified Attorney Valdespino as the "Escrow Agent" and listed Naman Howell's San Antonio law office as the escrow location. It required the Wyses to transfer $1 Million into an account titled "Edward F. Valdespino IOLTA" ("the IOLTA account") at PNC Bank in San Antonio, Texas. The Agreement further represented that the Wyses would receive approximately $10 Million within forty-five (45) days and required the return of the escrow funds within seventy-two (72) hours if that condition was not met.

23.    To trick the Wyses, Attorney Valdespino arranged a Microsoft Teams call with them on December 29, 2025. Speaking as a licensed attorney—an officer of the court, bound by oath to uphold the law and protect those who trust him—Attorney Valdespino vouched for the legitimacy of the escrow account and assured the Wyses that their money would be safe in his hands. Attorney Valdespino took the call from his office at Naman Howell and touted his prior litigation work and his current role at Naman Howell to induce the Wyses into joining the Program. Then Attorney Valdespino encouraged the Wyses to wire $1 Million into the IOLTA account. The spiel worked: the Wyses wired the money the same day.

24.    The wire transfer request is attached hereto as **Exhibit 3**. Attorney Valdespino confirmed receipt of the wire using his Naman Howell email address, a copy of which is attached hereto as **Exhibit 4**. Attorney Valdespino used his firm email—the one bearing the name of a well-established Texas law firm—because the name carried weight and he knew it.

25.    Following receipt of the Wyses' funds, Attorney Valdespino emailed with the Wyses exclusively through his Naman Howell email address, reinforcing his role as a licensed Texas attorney, member of a well-respected Texas law firm, and an alleged escrow agent. At that point, the Wyses had no reason to doubt him.

26.    But the promised investment activity never materialized. No trades occurred. No returns generated. When the Wyses began asking questions, Attorney Valdespino did not come clean. Instead, he kept reassuring them that their money was safe despite knowing the truth. The money was long gone.

27.    Soon after transferring the funds, the Wyses grew concerned because the alleged trades had never occurred. Attorney Valdespino kept placating the Wyses, imploring them to keep their money put. At the same time, Attorney Valdespino perpetuated the scheme, emailing his co-conspirator Mr. Greenwood about fictional trades and investments, and suggesting that he needed to confer with third parties regarding the disbursement of funds associated with the Program. A copy of the email is attached hereto as **Exhibit 5**.

28.    Throughout the course of events leading the Wyses to entrust Attorney Valdespino with their funds, Attorney Valdespino held himself out as a neutral and disinterested escrow agent and attorney, and supplied what purported to be multiple indicia of legitimacy, including: (a) a Texas attorney office address at a reputable firm, (b) an IOLTA account, (c) a Texas driver's license, (d) verifiable legal credentials, and (e) a signed escrow agreement.

29.     But Attorney Valdespino is not a neutral escrow agent. He leads a plot designed to induce people such as the Wyses to transfer funds under the guise of attorney-managed escrow protection. This lawsuit is at least the fourth instance of litigation in Texas alone that the Wyses' counsel located in which individuals tricked by Attorney Valdespino sued to get back their money.[2] And this lawsuit is, at least, the second instance in which Attorney Valdespino relied upon and directly involved Naman Howell, the San Antonio law firm employing him,[3] to add an air of credibility to his ruse.

30.     In late April 2026, a Bexar County District Court judge issued a temporary restraining order preventing Attorney Valdespino from transferring or removing $5 Million that belonged to another individual who had fallen prey to Attorney Valdespino's tricks. *See I.C. Deposits Development, Inc. v. Valdespino*, Cause No. 2026-CI-08116. Following a May 11, 2026 preliminary injunction hearing, Attorney Valdespino must now relinquish $5 Million of another victim's money into that court's registry. *See* **Exhibit 14**, May 11, 2026 order by Judge Larry Noll, *I.C. Deposits Development, Inc. v.* Valdespino, Cause No. 2026-CI-08116.

31.     Attorney Valdespino has worked in concert with Naman Howell to create a false appearance of legitimacy and to cause the Wyses to rely upon his status as a Texas attorney and escrow agent.

---

[2] *I.C. Deposits Development, Inc. v. Valdespino*, Cause No. 2026-CI-08116, 438th District Court, Bexar County, Texas (April 9, 2026); *Gonzalez v. Valdespino and Naman, Howell, Smith & Lee PLLC*, Cause No. 2025-CI-21139, 225th District Court, Bexar County, Texas (Sept. 5, 2025); and *Vilcorp v. Valdespino, et al.*, Cause No. 2021-CI-01485, 45th Judicial District, Bexar County, Texas (June 15, 2021). Copies of each complaint is attached hereto as **Exhibit 12**.

[3] *See* https://www.namanhowell.com/professionals/Edward-Valdespino (Last visited May 5, 2026).

32.    Naman Howell was recently sued for this very same scheme, also orchestrated by Attorney Valdespino, in Fall 2025.  *See Gonzalez v. Valdespino and Naman, Howell, Smith & Lee PLLC*, Cause No. 2025-CI-21139. Upon information and belief, Naman Howell quickly facilitated settlement of the Fall 2025 lawsuit so as to avoid drawing unnecessary attention to the Ponzi scheme.

33.    Naman Howell knew of Attorney Valdespino's insidious Ponzi schemes and yet, it continued holding him out to the public as a reputable and trustworthy attorney, and allowed him continued use of firm resources, which he employed for such ruses.  Naman Howell is a co-conspirator of the present scheme by allowing Attorney Valdespino to use Naman Howell's offices, resources, and the firm's reputation to facilitate such nefarious transactions.

34.    Plaintiffs would not have signed the Agreement or transferred any funds absent Attorney Valdespino's representations about: his legal credentials, his role at Naman Howell, the law firm's reputation, the validity and safety of the investment fund, and Attorney Valdespino's purported role as a neutral attorney escrow agent.

35.    On February 5, 2026, Plaintiffs made a formal written demand, attached hereto as **Exhibit 6**, that Attorney Valdespino immediately return their $1 Million principal and provided complete wire instructions.

36.    Thereafter, several mutual contacts in the Program contacted the Wyses in threatening tones and told the Wyses to stop contacting Attorney Valdespino because it would purportedly put the entire "program" at risk. Mr. Greenwood even sent the Wyses an email trying to silence them by discussing the non-disclosure agreement he had made the Wyses sign. Scared, but undeterred, the Wyses retained counsel and asked for help.

37.     Attorney Valdespino refused to return the funds, instead asserting that other people or separate agreements restricted his ability to do so.

38.     On April 20, 2026, the Wyses' counsel telephoned Attorney Valdespino and left a voicemail demanding the immediate return of the $1 Million transferred into the IOLTA account. That call was followed by an email demand, attached hereto as **Exhibit 7**, memorializing the same.

39.     On April 21, 2026, the Wyses' counsel sent Attorney Valdespino a further written demand letter, attached hereto as **Exhibit 8**, again demanding the immediate return of Plaintiffs' money. That same day, the Wyses' counsel sent a written letter to Larry D. Warren, Esq., President of Naman Howell, attached hereto as **Exhibit 9**, alerting him that Attorney Valdespino had abused his position as a lawyer and leveraged his firm's credibility to carry out a fraudulent scheme that induced the Wyses to part with their life savings.

40.     After receiving no immediate response from Naman Howell, on April 29, 2026, the Wyses' counsel wrote again to the President of Naman Howell. That correspondence is attached hereto as **Exhibit 10**.

41.     On that day, Mr. Warren responded by email, attached hereto as **Exhibit 11**. He offered the bare, conclusory assertion that "Naman Howell was uninvolved and unaware of the events you outline." At that time, Naman Howell offered no evidence, no supporting documentation, and no further explanation in support of this denial, leaving the Wyses' serious and well-documented accusations wholly unaddressed.

42.     Despite repeated and unequivocal demands, Attorney Valdespino continues to wrongfully withhold the Wyses' $1 Million, subjecting the Wyses to ongoing risk of loss or dissipation.

11

43. When the Wyses placed $1 Million of their money into the IOLTA account, they did not engage in speculation or risk-seeking behavior. They entrusted hard-earned capital—the product of four decades of labor—to a transaction they reasonably believed was lawful, legitimate, and protected by the professional and fiduciary obligation of a licensed attorney. Attorney Valdespino betrayed that trust. His fraudulent misconduct, abuse of his fiduciary position, and continued refusal to return funds that legally and equitably belong to the Wyses directly forced them to bring this action.

### FIRST CAUSE OF ACTION - DECLARATORY RELIEF

44. The Wyses repeat and reallege the allegations contained in paragraphs 1 through 43 as if set forth herein.

45. The Wyses seek a declaration pursuant to 28 U.S.C. §§ 2201-2202 and the Federal Rule of Civil Procedure 57, that Attorney Valdespino is wrongfully holding the Wyses' money.

46. In connection with the Agreement, Attorney Valdespino came into possession of the Wyses' money using an IOLTA account—specifically, the sum of $1 Million, which is the property of the Wyses and to which the Wyses are rightfully and exclusively entitled.

47. Despite multiple demands, Attorney Valdespino has refused and continues to refuse to release the money to the Wyses. Attorney Valdespino has wrongfully withheld and/or retained the money without lawful justification, colorable entitlement, or valid legal basis.

### SECOND CAUSE OF ACTION - FRAUD/FRAUDULENT INDUCEMENT

48. The Wyses repeat and reallege the allegations contained in paragraphs 1 through 47 as if set forth herein.

12

49.    The Wyses herein bring a cause of action against Attorney Valdespino for common law fraud.

50.    The elements of fraud in Texas are: (1) a material misrepresentation that was false, (2) made with knowledge of its falsity or recklessly without knowledge of its truth as a positive assertion, (3) with the intent that the other party act upon it (4) and the other party actually and justifiably relied on the misrepresentation, and (5) suffered injury as a result. *Ernst & Young v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

51.    On December 29, 2025, and continuing through emails, calls, and text messages from January through April 2026, Attorney Valdespino repeatedly  made material, false representations, including, but not limited to representations that: (a) Attorney Valdespino was acting as a neutral escrow agent, (b) the escrow account was legitimate and secure, (c) Attorney Valdespino would safeguard the Wyses' funds, (d) the underlying transaction was legitimate, and (e) escrow agent would return the $1 Million within seventy-two (72) hours if $10 Million was not transferred to the Wyses within 45 days of December 26, 2025. These misrepresentations include:

- December 29, 2025 (Microsoft Teams call): Attorney Valdespino vouched for the legitimacy and security of the escrow account and assured the Wyses their money would be safe in his hands. Calling from his office at Naman Howell, he invoked his position at the law firm and litigation experience to bolster credibility and induce the Wyses to participate in the Program, then encouraged them to wire $1 Million into the IOLTA account.

- January 21, 2026 (email): Using his Naman Howell email account, Attorney Valdespino reaffirmed that he was acting solely as a neutral escrow agent and disclaimed any role in decisions regarding the funds. Ex. 5. At the same time, he was actively perpetuating the scheme—emailing his co-conspirator Mr. Greenwood about fictional trades and investments, and suggesting that he needed to confer with third parties regarding the disbursement of funds associated with the Program. *Id.*

- February 2, 2026 (call and emails): Attorney Valdespino represented that he expected to receive funds for distribution that week. He also sent an email from his

Naman Howell account, **Exhibit 15A**, falsely assuring the Wyses that their funds remained in the IOLTA account. He attached a purported bank letter and account statements, **Exhibit 15B**, identifying himself as account holder and reflecting receipt of the Wyses' $1 Million—documents that appeared altered, including a visibly "pasted" transaction entry. When the Wyses requested copies of the signed agreements, Attorney Valdespino forwarded the fraudulent Business Agreement identifying himself as "Escrow Agent" and listing Naman Howell's San Antonio office as the escrow location. **Exhibit 16**.

- March 26-27, 2026 (text messages): On March 26, Attorney Valdespino claimed he had no update regarding the funds. The very next day, March 27, 2026, in response to Kevin Wyse's text inquiry, he reversed course and assured Kevin Wyse that the money was imminent.

52.    Attorney Valdespino knew the representations detailed in paragraph 51 were false or he made them recklessly without knowledge of their truth.  Attorney Valdespino intended the Wyses to rely on the representations that he made as detailed in paragraph 51.

53.    The Wyses reasonably relied on Defendant's misrepresentations and, as a direct result, transferred $1 Million to the IOLTA account, suffering damages.

## THIRD CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

54.    The Wyses repeat and reallege the allegations contained in paragraphs 1 through 53 as if set forth herein.

55.    The Wyses herein bring a cause of action against Attorney Valdespino for breach of fiduciary duty.

56.    A plaintiff asserting a breach of fiduciary duty claim must prove: (1) the existence of a fiduciary duty; (2) breach of said fiduciary duty; and (3) the breach resulted in injury. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

57.    By purporting to be an attorney of good standing with the Texas Bar, and by agreeing to act as an escrow agent holding the Wyses' money, Attorney Valdespino owed the

14

Wyses fiduciary duties, including duties of loyalty, honesty, neutrality, full disclosure, and proper safeguarding and disposition of escrow funds.

58.     Attorney Valdespino breached his fiduciary duties to the Wyses by, among other conduct: (a) failing to act as a neutral and disinterested escrow agent, (b) participating in or facilitating a scheme that exposed the Wyses' funds to misuse or loss, (c) making misrepresentations and failing to disclose material facts concerning the transaction and the Wyses' control over their funds, (d) attempting to insulate himself through contractual provisions, and (e) placing his own interests or the interests of third parties above the Wyses' interests.

59.     The Wyses seek actual damages, exemplary damages, disgorgement, a constructive trust over their money, and all other relief allowed by law.

### FOURTH CAUSE OF ACTION – CONSPIRACY

60.     The Wyses repeat and reallege the allegations contained in paragraphs 1 through 59 as if set forth herein.

61.     The Wyses herein bring a cause of action for conspiracy against Defendants.

62.     Under Texas law, civil conspiracy requires proof of the following elements: "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal*, 514 S.W.3d at 222. Civil conspiracy is a derivative tort and requires an independently actionable underlying wrong. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Each participant in a civil conspiracy is jointly and severally liable

15

for all acts committed in furtherance of the conspiracy. *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925–26 (Tex. 1979).

63.     Defendants and others known and unknown entered into a conspiracy to defraud the Wyses and to wrongfully obtain, retain, and/or dissipate the Wyses' funds under the false pretense of a legitimate attorney-managed escrow investment.

64.     Defendants agreed to accomplish an unlawful object, namely inducing the Wyses to transfer $1 Million based on false and misleading representations regarding the legitimacy of the investment, the existence of genuine trade activity, and the protection supposedly afforded by attorney escrow and a reputable Texas law firm.

65.     Defendants reached a meeting of the minds to carry out this scheme by, among other things, the repeated use of Naman Howell's email address system and server, firm affiliation, and office address to lend legitimacy to the scheme.

66.     In furtherance of the conspiracy, Defendants committed overt, unlawful acts, including but not limited to, making material misrepresentations and omissions to the Wyses regarding the escrow arrangement and investment program; continuing to mislead the Wyses after Defendants knew no legitimate investment activity existed; and refusing to return the Wyses' funds despite knowing they were entitled to immediate repayment.

67.     Defendants' actions were taken willfully, knowingly, and with the intent to deceive the Wyses and wrongly benefit from the misuse of the Wyses' funds.

68.     The Wyses suffered substantial damages as a direct and proximate result of Defendants' conspiracy, including the loss of $1 Million, loss of those funds, emotional distress, and attorneys' fees and costs.

16

**FIFTH CAUSE OF ACTION – KNOWING PARTICIPATION**

69.     The Wyses repeat and reallege the allegations contained in paragraphs 1 through 68 as if set forth herein.

70.     The Wyses herein bring a cause of action for knowing participation against Naman Howell.

71.     The general elements of a knowing-participation claim are: (1) the existence of a fiduciary relationship; (2) the third party knew of the fiduciary relationship; and (3) the third party was aware it was participating in the breach of that fiduciary relationship. *Meadows v. Harford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). Under Texas law, a party that knowingly participates in another's breach of fiduciary duty is jointly and severally liable for the resulting damages. *Id.*

72.     By agreeing to act as an escrow agent holding the Wyses' money, Attorney Valdespino owed the Wyses fiduciary duties, including duties of loyalty, honesty, neutrality, full disclosure, and proper safeguarding and disposition of escrow funds.

73.     This is at least the second instance in which Attorney Valdespino directly involved Naman Howell in his scheme to add an air of credibility to his ruse. Given the past litigation against Attorney Valdespino and Naman Howell, and Attorney Valdespino's continued employment at the firm, Naman Howell knew, or reasonably should have known, of Attorney Valdespino's fiduciary role and relationship with the Wyses. At all relevant times, Attorney Valdespino acted as a partner, agent, or employee of Naman Howell and used the firm's name, email system, reputation, and physical office address to conduct the escrow transaction.

74.     Naman Howell knowingly participated in or substantially assisted Attorney Valdespino's breach of fiduciary duty by, among other conduct, allowing Attorney Valdespino to

17

use firm credentials, firm communications systems, and firm branding to present the escrow agreement as legitimate; continuing to allow Attorney Valdespino to hold himself out as acting through the firm even after red flags and prior litigation involving similar conduct existed; and failing to take corrective action or assist in the return of the Wyses' funds once informed in writing of Attorney Valdespino's misconduct.

75.     Naman Howell knew or should have known that its conduct was assisting or enabling Attorney Valdespino's breach of fiduciary duty and that the Wyses were relying on the firm's involvement and reputation in deciding to entrust Attorney Valdespino with $1 Million.

76.     As a direct and proximate result of Naman Howell's knowing participation in Attorney Valdespino's breach of fiduciary duty, the Wyses suffered substantial damages, including the loss of $1 Million and related consequential damages.

## SIXTH CAUSE OF ACTION – MONEY HAD AND RECEIVED

77.     The Wyses repeat and reallege the allegations contained in paragraphs 1 through 76 as if set forth herein.

78.     The Wyses herein bring a cause of action for money had and received against Attorney Valdespino.

79.     "Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 189 (Tex. App.—Dallas 2013, *no pet.*) (internal quotation marks omitted). It is a claim which is equitable in nature. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007). It is not premised on whether the defendant committed any wrongdoing but rather "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El

18

Paso 1997, *no writ*). "In short, it is an equitable doctrine applied to prevent unjust enrichment." *MGA Ins. Co.* v. *Charles R. Chestnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, *no pet*.). "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id.*

80. Attorney Valdespino possesses or controls money that belongs to the Wyses.

81. Equity and good conscience require that Attorney Valdespino return the Wyses' $1 Million immediately.

### **SEVENTH CAUSE OF ACTION – UNJUST ENRICHMENT**

82. The Wyses repeat and reallege the allegations contained in paragraphs 1 through 81 as if set forth herein.

83. The Wyses herein bring a cause of action for unjust enrichment against Defendants.

84. "Unjust enrichment occurs when a person has wrongfully secured or passively received a benefit which it would be unconscionable to retain." *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 283 (Tex. App.—Tyler 2021, *pet. denied*). "A party may recover under an unjust-enrichment theory if one party has obtained a benefit from another by fraud, duress, or the taking of unfair advantage." *Id.*

85. Attorney Valdespino and Naman Howell have been unjustly enriched by retaining the Wyses' funds obtained through misrepresentation and abuse of trust.

86. The Wyses are entitled to a judgment in equity that Defendants be required to disgorge and pay back sums to them, or that this Court enact a constructive trust over the $1 Million transferred by the Wyses to Attorney Valdespino.

**FORTHCOMING AMENDED EMERGENCY *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

87.    The Wyses repeat and reallege the allegations contained in paragraphs 1 through 86 as if set forth herein.

88.    Pursuant to Local Rule CV-65, the Wyses' application for a temporary restraining order and preliminary injunction will be made in an instrument separate from this Amended Complaint.

89.    In order to obtain a temporary restraining order or a preliminary injunction, a movant must satisfy four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs the potential harm to the party sought to be enjoined; and (4) that granting the injunction will not disserve the public interest. *See Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 529–30 (5th Cir. 2020); *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021).

90.    As fully set forth in the accompanying Application for Temporary Restraining Order and Preliminary Injunction, the Wyses satisfy each of these four elements.

**JURY DEMAND**

91.    The Wyses demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER AND REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

(a) Immediately hear *ex parte* the application for a TRO and after the hearing issue a TRO enjoining Attorney Valdespino from the date of the TRO and for 14 days

20

thereafter from directly or indirectly transferring, dissipating, or withdrawing any or all of the Wyses' $1 Million;

(b) in the alternative, set a hearing on this application for a preliminary injunction and after a hearing, issue a preliminary injunction enjoining Attorney Valdespino from directly or indirectly transferring, dissipating, or withdrawing any or all of the Wyses' $1 Million;

(c) issue a declaration that the $1 Million transferred from the Wyses to the IOLTA account in question is the property of the Wyses and belongs to them;

(d) issuance of an order instructing Attorney Valdespino to immediately return the $1 Million transferred into his IOLTA account by the Wyses;

(e) issue a writ of attachment over the funds held in the IOLTA account ending in –5083 at PNC Bank, N.A.;

(f) a constructive trust over the Wyses' $1 Million transferred to the control and possession of Attorney Valdespino;

(g) all damages requested;

(h) reasonable and necessary attorneys' fees;

(i) pre-judgment and post-judgment interest as provided by law;

(j) costs of court; and,

(k) such other and further relief, at law or in equity, as the Court deems just and proper.

Dated:      Buffalo, New York          Respectfully submitted,
            May 14, 2026

**HODGSON RUSS LLP**
*Attorneys for Plaintiffs*

By: _____

**Jennifer E. Brevorka**
Texas Bar No. 24082727
jebrevorka@hodgsonruss.com
**Julia M. Hilliker**
(*pro hac vice* forthcoming)
jhilliker@hodgsonruss.com
**Sera Yoon**
(*pro hac vice* forthcoming)
seyoon@hodgsonruss.com

The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
Telephone: (716) 856-4000

22

## VERIFICATION OF AMENDED COMPLAINT

STATE OF NEW YORK    )

                         )SS.:

COUNTY OF ERIE        )

I, HOLLY WYSE, being duly sworn, deposes, and says that I am the Plaintiff in the above captioned action. I have read the foregoing Verified Amended Complaint and know its contents. The facts presented in the document are true to my own knowledge, except as to matters stated to be upon information and belief, and as to those matters, I believe them to be true. The basis for this verification is my personal knowledge, investigation into the subject matter of this action, and my review of relevant documentation.

_____
Holly Wyse

Sworn to before me this 13th day
of May, 2026

_____
Notary Public

MEGHAN DANIELLE LEVEA-ROKICKI
Notary Public, State of New York
Reg. No. 01LE0048265
Qualified in Niagara County
Commission Expires 03/26/2030

23

## VERIFICATION OF AMENDED COMPLAINT

STATE OF NEW YORK  )

         )SS.:

COUNTY OF ERIE    )

  I, KEVIN WYSE, being duly sworn, deposes, and says that I am the Plaintiff in the above captioned action. I have read the foregoing Verified Amended Complaint and know its contents. The facts presented in the document are true to my own knowledge, except as to matters stated to be upon information and belief, and as to those matters, I believe them to be true. The basis for this verification is my personal knowledge, investigation into the subject matter of this action, and my review of relevant documentation.

_____<br>Kevin Wyse

Sworn to before me this 13th day

of May, 2026

_____

Notary Public

MEGHAN DANIELLE LEVEA-ROKICKI
Notary Public, State of New York
Reg. No. 01LE0048265
Qualified in Niagara County
Commission Expires 03/26/2030

24

## Certificate of Service

I hereby certify that on May 14, 2026, a true and correct copy of the foregoing instrument has been served upon all parties registered to receive notices by PACER via the Court's ECF/PACER system and I have sent copies via e-mail to all parties.

_____
Jennifer E. Brevorka