# EXHIBIT 1

**LARK RENEWABLE ENERGY INC.**

# BUSINESS AGREEMENT

THIS AGREEMENT is made as of the **8th** Day of the month of **December**, **2025** (the "**Effective Date**") between **Lark Renewable Energy Inc**., a Canadian corporation with offices at 5311 John Lucas Drive, Unit 8, Ontario, Canada ("**LARK**"), and **Holly and Kevin Wyse,** individuals located at REDACTED, Amherst ("**WYSE**").

WHEREAS:

A. **LARK and WYSE** will enter into a business venture where both parties will participate in a Private Placement Program ("PPP"), known as the Texas Program; and

B. **LARK** will provide the access to the Texas program and **WYSE** will provide the funds in the amount of ONE MILLION US Dollars (USD$1,000,000), ("Funds" or "Loan") to facilitate the Texas Program transaction; and

C. **WYSE** will provide the Funds by way of a Loan to **LARK**, where the Funds will be transferred by **WYSE** directly into a Law Firm Escrow Account in the name of **LARK**, where the Funds will be held for the duration of the Term of this Agreement; and

D. **LARK** will have **WYSE** as a co-signatory on the Escrow Account, ensuring that the Funds will not move from Escrow for any reason; and

E. **LARK** will provide **WYSE** with a share of the earnings, as noted herein, made during the Term of this Agreement and the Term of the Texas Program Contract; and

F. **LARK** will arrange with the Broker for the Texas Program that **WYSE** be provided with their own Texas Program Contract on or before May 15th, 2025.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereby agree as follows: **A**. Term:

1. The Term of this Agreement will be driven by the length of Three (3) trade 'Cycles' as described in the Trade Program Summary included in this Agreement.
2. The Term is estimated to be Four (4) months from the date that the first Trade Cycle begins.
3. The estimated date for the beginning of the first Trade Cycle is December 19, 2025.
   a. The Texas Trade Program will confirm the start date with the signing of the

Contract. **B**. Summary of General Terms:

1. WYSE will be positioned as a Lender of Funds to LARK Renewable Energy Systems Inc. A Canadian Registered Corporation.
2. The Loan Value will be: USD$1.0 million.
3. The Loan Term ("Term") will be: Four (4) months from the first day of Trading.

4. A Dividend will be paid to WYSE at the end of each Trade Cycle.
5. The Trade Cycle is stated by the Texas Trade Program to be between four (4) and six (6) weeks in length.
6. The Dividend Payment will be equal to the Loan Value.
7. There will be Three (3) Cycles completed within the four month Term.
8. The four month Term may be extended to allow for the completion of the third Cycle, which will be undertaken by the Texas Trade Program.
9. At the end of Cycle 1, the LENDER will receive a Dividend of USD$1.0 million. 10. At the end of Cycle 2, the LENDER will receive a Dividend of USD$1.0 million.
11. At the end of Cycle 3, the LENDER will receive a Dividend of USD$1.0 million.
12. At the end of the Term, the Loan held in Escrow will be returned to WYSE.

**C.** BONUS To WYSE From LARK:

1. LARK will also provide a Bonus to WYSE at the end of the Term.
2. LARK will recommend WYSE to become a Client for their own Contract with the Texas Program.
3. LARK will arrange for an introduction of WYSE to the Broker in the month following the end of the LOAN Term.
4. LARK will establish a new Escrow Account in the sole name of WYSE and deposit USD$3.0 million from the LARK account, to be used for Trading by WYSE.
5. While LARK cannot guarantee that WYSE will be accepted as a Client, LARK will leverage its position as a Client to the full extent possible.

**D.** Security of Funds:

1. WYSE will transfer the LOAN directly to the Trader's Law Firm, into the LARK Escrow Account.
2. The Loan Funds must remain in the Escrow Account for the term of this Agreement.
3. The Trader's Law Firm is located in Texas with more than one hundred associates and has been in business for more than one hundred years.
4. LARK will arrange to have WYSE on the Escrow Account, with directions that the Funds will not move without the approval of WYSE.
5. LARK will share the electronic account access code on the Escrow Account with WYSE.
6. LARK will provide a copy of the Escrow Account Agreement to WYSE.
7. Dividends will be disbursed by LARK's Law Firm, who is a licensed Paymaster.

**E.** Trade Program Summary:

1. Confidentiality between the two parties is the cornerstone of being able to participate in a Trading Program.
2. Details of the Texas Trade Program are detailed in the attached Schedule 'A'.

**F.** Structure of the Texas Trade Program:

1. The specific details of the operations of the Texas Trade Program are proprietary to the Program itself.
2. Some information is provided to Clients of the Program and this has been detailed in the attached Schedule 'B'.

**G.** Process and Steps:

1. WYSE provides LARK with the CIS and Proof of Funds.
2. LARK presents the WYSE and LARK CIS documents to Broker.
3. LARK has conference call with Broker and Onboarding Officer (Trader).
4. Onboarding Officer secures approval from Trader.
5. LARK has conference call with Trader's Law Firm.
6. LARK receives Trade Contract and Escrow Agreement – signs both.
7. LARK receives Trade Contract signed by Trader and the Escrow Agreement.
8. LARK receives fund transfer instructions.
9. WYSE transfers Funds into LARK's Escrow Account.
10. LARK and WYSE advised of the Trade Contract start date.
11. LARK provides updates to WYSE on agreed to schedule.
12. LARK provides copy of Paymaster Contract to WYSE.
13. Trade Contract completes Cycle 1.
14. LARK's Paymaster disburses Dividend # 1 to Wyse.
15. Trade Contract begins Cycle 2 and this process continues through to completion of Cycle 3.

**H.** Disclosure to Third Parties:

Each party agrees that it shall not, at any time, disclose, in whole or in part, the Confidential Information to any third party, without first obtaining express written permission from the Disclosing Party.

**I.** Representations and Warranties:

Each party hereby warrants, represents and covenants to the other party that (a) each respective party has the right to enter into this Agreement and to perform fully all of its obligations under this Agreement, and (b) each respective party is not a party to any other agreement or under any other obligation to any third party which would prevent it from entering into this Agreement and complying with the terms and conditions set forth in this Agreement. J. Miscellaneous.

Neither this Agreement nor the rights of either party hereunder may be assigned without the prior written consent of the other party.

## LARK RENEWABLE ENERGY INC.

This Agreement contains the full and complete understanding between the parties with regard to the subject matter hereof and cannot be modified or amended except by a written instrument signed by each party.

Any notice or other communication hereunder shall be in writing and shall be deemed fully made or given (i) when hand delivered or delivered via email, (ii) on the business day after it is delivered to a recognized overnight courier service for overnight delivery to a party, or (iii) three (3) business days after it is mailed to a party, postage prepaid, by registered or certified mail, return receipt requested, in each case at the following addresses:

**If to LARK**:
Burlington, Ontario, Canada L7L 6A8

Attention: G. Paul Greenwood, President & CEO
Email: pgreenwood@larkrenewableenergy.ca

Phone : REDACTED-5604

**If to WYSE**: REDACTED
**Amherst, United States**
Attention: Holly Wyse
Email: hollyski@proton.me

Phone : REDACTED -2170

This Agreement shall be governed by and construed under the laws of Ontario, Canada without giving effect to the principles or doctrines of conflict or choice of laws. Any controversy or claim arising out of, or relating to, this Agreement and/or the execution or breach thereof, shall be subject to the jurisdiction of the appropriate court in the city of Toronto, Ontario, Canada.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**LARK RENEWABLE ENERGY INC.**

Per:

Name: G. Paul Greenwood
Title: President, CEO & Founder **HOLLY AND KEVIN WYSE**

Per:

Name: Holly Wyse

Name: Kevin Wyse

LARK RENEWABLE ENERGY INC.

## SCHEDULE 'A'

- Confidentiality is the cornerstone of being able to participate in a Trading Program.
- All Clients sign a Non-Disclosure Agreement that must be followed in the strictest sense. Not doing so will result in the Client being removed from the Program.
- Paul Greenwood and LARK would also be at risk of losing its Trade Contract if Confidential Information is shared outside of the principles in the group.
- This investment falls under the description of a Private Placement Program ("PPP").
- This is a strict "Invitation Only" opportunity that operates internationally.
- All Trade Programs are monitored and overseen by the banking and trading community.
- There are strict rules and regulations that these licensed Traders must abide by, with the risk of losing their license and possibly legal action taken against them.
- As such, the Traders protect their business very closely.
- The Traders are no authorized to solicit clients on a direct basis.
- The Traders must use an accredited business broker to screen potential clients.
- It is very difficult to be introduced to an accredited business broker.
- Paul Greenwood has known this accredited broker for more than seven years.
- In 2024, this broker became a partner in a Company located in London, UK.
- It is this Broker Company that Paul Greenwood is now a client.
- Paul Greenwood has interviewed with the Trader Program's Onboarding Officer and has been approved to be a Client by the Trader.
- The Program was created to provide successful businesspeople with access to large value funds for investment into projects.
- The standard requirement is that eighty percent (80%) of the earnings are invested into projects, with the remaining funds left to the Client's personal discretion.
- The Program was structured so that the investor would not place their funds at risk, to encourage qualified investors to participate in the Program.
- The investor only needs to demonstrate that they have significant funds to qualify for participation with a record of success.
- The Program structure is set up where the Banks are involved and they provide the actual funds that are used to conduct the trading transactions.
- In some cases, the Banks use their own internal trading desks and have a number of authorized Traders that manage the transactions.
- These are known as Large Cap Bank Programs. Generally, only the larger Tier One banks manage this level of investment.
- In some cases, a Bank may choose to collaborate with a licensed Trader on smaller value trade programs, called Small Cap Programs.
- Paul Greenwood is participating in a Small Cap Program.
- This Trade Program is owned by a licensed trader in the State of Florida, USA.
- The parameters/rules of the Program are as follows:
    - The Bank is not authorized to get involved in a trade program without a client.
    - The Trader is not authorized to get involved in in a trade program without a

client. o The Bank is not authorized to use their own cash in a trade program. o The Trader is not authorized to use their own cash in a trade program.

- o Neither party can directly solicit a client.

**SCHEDULE 'B'**

- o The Trader has a contract with a Bank. o In this case, the Trader has a contract with Bank of America. o The Trader establishes a Line of Credit Contract with the Bank. o In order to access the Line of Credit, the Trader must present a Client to the Bank with funds on deposit at the Trader's Law Firm. o Once the client is approved by the Bank – passes compliance on the source of funds – then the Trader can sign a Trade Contract and access funds for trade from their Line of Credit.
- o The Line of Credit provided for a specific Client is based on using a large multiple of the value of funds in Escrow.
- o Similar to a bank using their cash deposits to establish a value for lending, the Trader has an agreed to multiplier for setting the Line of Credit.
- o Unlike the traditional cash to loan formula governed by the consumer/commercial sector of banking, a much higher multiplier is used for trading as there is no risk involved in the 'Use of Funds'.
- o Unlike traditional Lines of Credit, where an investor's funds are used as collateral, with trading, the investor's funds are not encumbered in any way, as they are not used in trading transactions. o The Bank knows that the Line of Credit is only used for trading and both the Bank and the Trader know exactly what the earnings will be. For them, there is no risk.
- o No one outside of the Bank and the Trader know what the total earnings will be. o The Client is given a fixed earnings contract and the value of earnings is only a portion of the total earnings.
- o The multiplier that the Client is provided with is Ten (10) times the value held in escrow. o The Trade Contract guarantees this level of return. o The period in which the earnings are made is based on trading taking place during 'One Cycle' of trading.
  - One Cycle of Trading is between four (4) and six (6) weeks.
  - The timing is flexible as the contract is focused on the rate of return and not on the time it takes to provide the return.

One needs to understand that the reasons behind the creation of these trading programs was to provide high value investments into the economy to generate new jobs, the support and expansion of innovative technologies and for the general community development. The high rates of earnings were set to provide meaningful values of funds for investment, so that the program would be effective.