**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **HOLLY WYSE and KEVIN WYSE,** *Plaintiffs* | § § § | |
| ***v.*** | § § | **CIVIL ACTION NO. 5:26-CV-02973** |
| **EDWARD F. VALDESPINO and NAMAN, HOWELL, SMITH & LEE, PLLC,** *Defendants* | § § § § | |

**MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

TO THE HONORABLE COURT:

Defendant Edward F. Valdespino files this Motion to Stay Proceedings and Compel Arbitration and respectfully shows as follows:[1]

**Introduction**

Plaintiffs' claims against Valdespino are based upon Valdespino's duties under a Combined Escrow Agreement and Deed of Agreement (the "Escrow Agreement"). *See* ECF No. 6 ¶ 22 & 6-3.[2] The very first provision of the Escrow Agreement provides: "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. . . . Disputes shall be resolved through binding arbitration under the rules of the American Arbitration Association (AAA)[.]" ECF No. 6-3 § 1.

---

[1] This motion is properly filed before the filing of a responsive pleading. *See Adams v. ACSO of Tex., Inc.*, No. SA-11-CA-0187-XR, 2011 WL 2421088, at *4 (W.D. Tex. June 13, 2011) (Rodriguez, J.). To the extent an answer or other responsive pleading should become necessary, Defendant reserves all rights and defenses with respect to the same.

[2] A copy of the Agreement is also attached as Exhibit A.

Federal courts sitting in diversity will apply the Texas General Arbitration Act (TAA) where, like here, state arbitration rules are invoked in a choice-of-law provision. *ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co.*, 188 F.3d 307, 310 (5th Cir. 1999) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)). Under the TAA, when litigants are bound by an arbitration agreement, the court must compel their dispute to arbitration and abate its own proceedings. TEX. CIV. PRAC. & REM. CODE § 171.021(a), (c); *see also* 9 U.S.C. § 3 (requiring the district court to, upon application, refer arbitrable claims to arbitration and stay its own proceedings).

Although Plaintiffs did not sign the Escrow Agreement, federal and Texas courts recognize that "so long as there is *some* written agreement to arbitrate, a third party may be bound to submit to arbitration." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (emphasis in orig., citation omitted); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). "Federal and Texas state courts have recognized . . . principles of contract law and agency may bind a non-signatory to an arbitration agreement." *In re Kellogg Brown*, 166 S.W.3d at 738 (compiling authorities). Several of those principles apply here.

Regarding arbitrability, the Supreme Court of Texas has aligned "with the vast majority of courts," including the Fifth Circuit, in holding "an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator"—*not the court*—"must decide whether the parties' dispute must be resolved through arbitration." *Total Energies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 708 (Tex. 2023); *see also Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671,

675 (5th Cir. 2012) (holding express incorporation of the AAA rules is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability).

Therefore, and as discussed in more detail below, because Plaintiffs are bound to the Escrow Agreement's arbitration provision, the Court must abate this proceeding and compel Plaintiffs' claims against Valdespino to the arbitrator to determine the scope of arbitrability.

**Argument and Authorities**

Both federal and Texas law "strongly favor arbitration." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 612 (5th Cir. 2016); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). Accordingly, courts resolve any doubts in favor of arbitration. *Hays*, 838 F.3d at 612; *G.T. Leach Builders, LLC v. Sapphire VP, LP*, 458 S.W.3d 502, 521 (Tex. 2015).

The only question this Court must answer is whether the parties are bound by a valid agreement to arbitrate. *See Total Energies*, 667 S.W.3d at 708; *Petrofac*, 687 F.3d at 675. The answer to that question is *yes.*

Although Plaintiffs did not sign the Escrow Agreement, both federal and Texas courts recognize several theories "arising out of common principles of contract and agency law" under which non-signatories may be bound to arbitration agreements. *In re Kellogg Brown*, 166 S.W.3d at 739. Those include, among others: (1) agency, (2) equitable estoppel, (3) third-party beneficiary, and (4) incorporation by reference. *Id.* (citing *Bridas*, 345 F.3d at 356). Whether a plaintiff's claim is subject to one of these theories turns on the substance of the claim, not artful pleading. *See In re Weekley Homes, LP*, 180 S.W.3d 127, 131–32 (Tex. 2005).

Each applies here.

**1. Agency**

"Agency is the 'fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Bridas*, 345 F.3d at 356 (quoting RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958)). An agency relationship may be demonstrated by the words or conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Id.* If the agent signed a contract containing an arbitration agreement, then his principal will be bound by that agreement. *Id.*

Looking to the substance of the allegations, Plaintiffs signed a "Business Agreement" with Lark Renewable Energy, Inc., in which Lark and Plaintiffs would participate together in an investment program. ECF No. 6-2 at recitals. Lark agreed to provide Plaintiffs "access" to the program, and Plaintiffs agreed to transfer $1 million directly to an escrow account held by Valdespino (a non-party to the Business Agreement). *Id.* § D(1). In exchange, Lark agreed to "arrange to have [Plaintiffs] on the Escrow Account" and provide Plaintiffs a copy of the Escrow Agreement. *Id.* § D (4), (6).

Plaintiffs therefore allege that the Business Agreement essentially required Lark to act as their agent and broker in connection with the Escrow Agreement. Lark performed its obligations to Plaintiffs, in part, by entering into the Escrow Agreement which, although it identified Lark as the investor, actually concerned Plaintiffs' (not Lark's) funds. *See* ECF No. 6-3.

Because Plaintiffs intended and agreed in writing that Lark would act as their agent and broker in participating in the program through Lark, they should be bound by the Escrow Agreement as the principals of Lark (a signatory). *C.f. Bridas*, 345 F.3d at 356 (holding

signatory (a Turkmenistan company) was not agent for non-signatory (the government of Turkmenistan)). While the *Bridas* court stated that "arbitration agreements apply to nonsignatories only in rare circumstances," the circumstances present there are in stark contrast to those here. *Id*. ("We are simply unable to conclude that the parties, one a multi-national corporation who has negotiated joint venture agreements in the past, and the other, a sovereign nation, both represented by able counsel, intended Turkmenneft to sign the JVA as an agent of the Government in the absence of clearer language to that effect.").

**2. Equitable (aka "direct benefits") estoppel**

"Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *In re Kellogg Brown*, 166 S.W.3d at 739. Similarly, a non-signatory plaintiff may be compelled to arbitrate if his claims are "based on a contract" containing an arbitration agreement. *Id.* at 740 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001)). "Simply put, a person 'cannot both have his contract and defeat it too.'" *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018) (quoting *In re Weekley Homes, LP*, 180 S.W.3d 127, 135 (Tex. 2005)).

"In the archetypal direct-benefits case, the party opposing arbitration seeks to enforce the terms of an agreement with an arbitration clause." *Id.* For instance, a trust beneficiary's suit to remove the trustee was arbitrable even though the beneficiary did not sign the trust agreement because his suit was based on the trustee's alleged violation of the trust agreement. *Id.* (citing *Rachal v. Reitz*, 403 S.W.3d 840, 847–48 (Tex. 2013)).

And while fiduciary duties generally arise from the parties' relationship, rather than a contract, *see id.* at 638, that's not the case here. Plaintiffs allege they had no independent

relationship of trust and confidence with Valdespino. Rather, Plaintiffs agreed in the Business Agreement to transfer funds to Valdespino's escrow account, and it was the Escrow Agreement that required Valdespino to return the funds within 72 hours if Plaintiffs did not receive $10 million within 45 days. ECF No. 6 ¶ 22.

Plaintiffs' claims depend upon the Escrow Agreement, which they attached to their complaint. *See* ECF No. 6-3. For instance, Plaintiffs assert claims against Valdespino for, among other things, declaratory relief related to the Escrow Agreement, fraudulent inducement (presumably of the Escrow Agreement), and breach of fiduciary duties created by the Escrow Agreement. ECF No. 6 ¶¶ 46–62. The primary relief Plaintiffs seek is return of the $1 million they transferred to Valdespino, which they claim is a right created by the Escrow Agreement. *See id.*

Accordingly, Plaintiffs are estopped from avoiding the Escrow Agreement's arbitration provision. *See In re Kellogg Brown*, 166 S.W.3d at 739.

**3. Third-party beneficiary**

Like direct benefits estoppel, the third-party beneficiary doctrine precludes a plaintiff from disavowing an arbitration agreement in a contract he did not sign if the contract was formed for his benefit. *Bridas*, 345 F.3d at 362. The analysis focuses on the parties' conduct at the time the contract was signed. *Id.*

For example, the Supreme Court of Texas held owners of a mobile home, who received the home as a gift from their parents, were bound by the arbitration agreement between their parents and the seller. *In re FirstMerit Bank*, 52 S.W.3d at 755. Similarly, a wife was a third-party beneficiary of a contract between her husband and a home exterminator. *In re Rangel*, 45 S.W.3d 783, 787 (Tex. App.—Waco 2001, no pet.).

Here, Plaintiffs allege the Escrow Agreement was formed for their benefit. Indeed, in exchange for Plaintiffs' investment, the Business Agreement required Lark to enter the Escrow Agreement. *See* ECF No. 1-2. The Business Agreement also required Lark to provide a copy of the Escrow Agreement to Plaintiffs and give Plaintiffs electronic access to the escrow account established by that agreement. *Id.* §§ D(5), (6). Accordingly, because the Escrow Agreement was formed for Plaintiffs' benefit, Plaintiffs cannot avoid the Escrow Agreement's arbitration clause.

**4. Incorporation by reference**

Under the doctrine of incorporation by reference, when one contract refers to another, the latter may constitute part of the former. *Cappadonna Elec. Mgmt. v. Cameron County*, 180 S.W.3d 364, 371 (Tex. App.—Corpus Christi-Edinburg 2005, no pet.). No magic language is required to incorporate by reference so long as the signed contract plainly refers to another writing. *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex. App.—Austin 2001, pet. denied).

Plaintiffs signed a "Business Agreement" with Lark Renewable Energy, Inc., in which they agreed to transfer $1 million directly to Valdespino's escrow account. ECF No. 6 § D(1). In exchange, Lark agreed to "arrange to have [Plaintiffs] on the Escrow Account" and provide Plaintiffs a copy of the Escrow Agreement. *Id.* § D (4), (6). The Business Agreement refers to the Escrow Agreement and the resulting escrow account repeatedly:

> C. **WYSE** will provide the Funds by way of a Loan to **LARK**, where the Funds will be transferred by **WYSE** directly into a Law Firm Escrow Account in the name of **LARK**, where the Funds will be held for the duration of the Term of this Agreement; and

> D. **LARK** will have **WYSE** as a co-signatory on the Escrow Account, ensuring that the Funds will not move from Escrow for any reason; and

> **D.** Security of Funds:
>
> 1. WYSE will transfer the LOAN directly to the Trader's Law Firm, into the LARK Escrow Account.
> 2. The Loan Funds must remain in the Escrow Account for the term of this Agreement.
> 3. The Trader's Law Firm is located in Texas with more than one hundred associates and has been in business for more than one hundred years.
> 4. LARK will arrange to have WYSE on the Escrow Account, with directions that the Funds will not move without the approval of WYSE.
> 5. LARK will share the electronic account access code on the Escrow Account with WYSE.
> 6. LARK will provide a copy of the Escrow Account Agreement to WYSE.
> 7. Dividends will be disbursed by LARK's Law Firm, who is a licensed Paymaster.

> **G.** Process and Steps.
>
> 1. WYSE provides LARK with the CIS and Proof of Funds.
> 2. LARK presents the WYSE and LARK CIS documents to Broker.
> 3. LARK has conference call with Broker and Onboarding Officer (Trader).
> 4. Onboarding Officer secures approval from Trader.
> 5. LARK has conference call with Trader's Law Firm.
> 6. LARK receives Trade Contract and Escrow Agreement – signs both.
> 7. LARK receives Trade Contract signed by Trader and the Escrow Agreement.
> 8. LARK receives fund transfer instructions.
> 9. WYSE transfers Funds into LARK's Escrow Account.
> 10. LARK and WYSE advised of the Trade Contract start date.
> 11. LARK provides updates to WYSE on agreed to schedule.
> 12. LARK provides copy of Paymaster Contract to WYSE.
> 13. Trade Contract completes Cycle 1.
> 14. LARK's Paymaster disburses Dividend # 1 to Wyse.
> 15. Trade Contract begins Cycle 2 and this process continues through to completion of Cycle 3.

ECF No. 6-2 at recitals, §§ D, G (emphases added).

The Business Agreement therefore plainly refers to the Escrow Agreement such that the latter agreement is incorporated by reference. Accordingly, Plaintiffs agreed to be bound by the Escrow Agreement by signing the Business Agreement.[3]

**Conclusion and Prayer**

Under multiple, well-settled principles, Plaintiffs and Valdespino are parties to the arbitration agreement contained in the Escrow Agreement. Any dispute regarding the validity of that agreement is reserved to the arbitrator, as is any question regarding whether Plaintiffs' claims are within the scope of the arbitration agreement. Therefore, this Court *must* refer Plaintiffs' claims to AAA for arbitration.

For these reasons, Valdespino respectfully requests that the Court grant this motion, refer Plaintiffs' claims to AAA, abate these proceedings pending arbitration, and grant Valdespino all further relief to which he may be entitled at law or in equity.[4]

Dated: May 15, 2026.

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: */s/ Caroline Newman Small*

Jason M. Davis
State Bar No. 00793592
E-mail: jdavis@dslawpc.com

---

[3] While the *Cappadonna* case ultimately held there was no incorporation, that case involved distinguishing circumstances not present here. *See Cappadonna*, 180 S.W.3d at 371–73 (declining to find incorporation by reference where contract had language "specifically disclaim[ing] any contractual relationship with the [non-signatory]").

[4] The Court also has discretion to dismiss this case because all issues in the litigation must be resolved in arbitration. *See Lifecell Corp. v. Carver*, No. SA-14-CV-152-XR, 2014 WL 12586857, at *1 (W.D. Tex. July 11, 2014) (Rodriguez, J.) ("The Fifth Circuit is clear that when all issues are properly referable to arbitration, the case may be either dismissed or stayed."); *Lauzon v. Pulte Homes, Inc.*, No. SA-12-CV-177-XR, 2012 WL 4434761, at *5 (W.D. Tex. Sept. 24, 2012) (Rodriguez, J.) ("The Fifth Circuit encourages district courts to dismiss cases in instances where staying the action serves no purpose.") (cleaned up).

Caroline Newman Small
State Bar No. 24056037
E-mail: *csmall@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Tel.: (210) 853-5882
Fax: (210) 200-8395
***Attorneys for Defendant***
***Edward F. Valdespino***

**Certificate of Service**

I certify that a true and correct copy of the foregoing document was served upon the interested parties listed below in accordance with the Federal Rules of Civil Procedure via the method indicated below on May 15, 2024.

| | | |
|---|---|---|
| Jennifer E. Brevorka | ______ | U.S. Mail |
| Julia M. Hilliker | ______ | CMRRR |
| Sera Yoon | ______ | Facsimile |
| E-mail: *jebrevorka@hodgsonruss.com* | ______ | E-mail |
| E-mail: *jhilliker@hodgsonruss.com* | __X__ | E-file |

E-mail: *seyoon@hodgsonruss.com*
HODGSON RUSS LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040

***Attorneys for Plaintiffs***

_/s/ *Caroline Newman Small*_______
Caroline Newman Small