**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| HOLLY WYSE, KEVIN WYSE, | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Case No.  SA-26-CA-02973-XR |
| | § | |
| EDWARD   VALDESPINO;   NAMAN, | § | |
| HOWELL, SMITH & LEE, PLLC, | § | |
| *Defendants* | § | |

## <u>ORDER DENYING MOTION</u>

On this date, the Court considered Plaintiffs Holly and Kevin Wyse's Amended Motion for a Temporary Restraining Order, a Preliminary Injunction, a Writ of Attachment, a Constructive Trust, an Equitable Accounting, and Expedited Discovery (ECF No. 7).   After careful consideration, the Motion is **DENIED.**

## BACKGROUND

In the Original and Amended Complaints, the Plaintiffs allege the following.   In late December 2025, Plaintiffs transferred $1 million into an "Interest on Lawyers' Trust Account" ("IOLTA") controlled by Defendant Edward Valdespino.   Valdespino and others represented to Plaintiffs that the money would be used in an investment program, that Valdespino would hold the money in escrow, and that Plaintiffs would receive about $10 million in forty-five days.   The forty-five days passed, and Plaintiffs saw no returns.   So they began asking for their money back. Valdespino refused, claiming that other people and/or agreements prevented him from returning the money at that time.   Valdespino is a lawyer who works for the firm Naman, Howell, Smith & Lee, PLLC ("Naman Howell").

On May 6, 2026, Plaintiffs brought this suit against Valdespino and Naman Howell for declaratory relief, fraud/fraudulent inducement, breach of fiduciary duty, conspiracy, knowing

participation, money had and received, and unjust enrichment.  ECF No. 1 at 12–19.  Plaintiffs then filed a motion for a temporary restraining order ("TRO"), a preliminary injunction, a writ of attachment, a constructive trust, a sworn accounting, and expedited discovery.  ECF No. 3.  After filing an Amended Complaint to cure jurisdictional deficiencies, ECF Nos. 4, 6, Plaintiffs filed an Amended Motion, primarily to update citations in light of the Amended Complaint.  ECF No. 7. The motion seeks relief only against Valdespino, not against Naman Howell.

**TEMPORARY RESTRAINING ORDER**
**& PRELIMINARY INJUNCTION**

To be entitled to a TRO or preliminary injunction, a movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest.  *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *Hill v. Green Cnty. Sch. Dist.*, 848 F. Supp. 697, 703 (S.D. Miss. 1994) (citing *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567 (5th Cir. 1974)).  TROs and preliminary injunctions are "extraordinary remed[ies]" that "should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."  *Mobile Med Work Health Sols., Inc. v. Moore*, No. 1:24-CV-1219-RP, 2024 WL 6815707, at *2 (W.D. Tex. Oct. 11, 2024); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

Plaintiffs have not shown a substantial threat of irreparable harm.  "To meet its burden to show irreparable harm, a movant must show that 'irreparable injury is *likely* in the absence of an injunction.'"  *Moore*, 2024 WL 6815707, at *3 (emphasis in original) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs]

2

heavily against a claim of irreparable harm." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (alteration in original). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). But "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.*

> [W]here a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds.

*Id.* Further, "a showing of '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" *Alguire*, 647 F.3d at 600 (quoting *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir. 1980)).

In this lawsuit, Plaintiffs seek: a declaration that the $1 million they gave to Valdespino belongs to them, an order instructing Valdespino to return the money, damages, attorneys' fees, pre- and post-judgment interest, and costs of court. ECF No. 1 at 20. That is, they seek money, which can presumably be obtained after a final judgment.

Plaintiffs argue that Valdespino might dissipate their $1 million absent a TRO or preliminary injunction and that such dissipation can give rise to irreparable harm. *See Alguire*, 647 F.3d 585. There are two problems with that argument.

First, Plaintiffs have not shown that Valdespino is likely to dissipate the $1 million. They say that: (1) there have been other cases against Valdespino for conduct like that alleged here, (2) the state court in one of those cases recently issued a TRO and then converted that TRO into a preliminary injunction, (3) Valdespino has refused to return Plaintiffs' money several times in the last three months, and (4) Valdespino seemingly controls the account with the money in it. But

that argument is essentially that this is a fraud case against someone who has allegedly defrauded multiple people; Plaintiffs' "concern that Defendants may dissipate assets is prevalent across a host of different fraud schemes." *Moore*, 2024 WL 6815707, at *3. And, as noted above, TROs and preliminary injunctions are "extraordinary remedies." Absent a more concrete reason to believe that Valdespino will dissipate the relevant assets, Plaintiffs have not shown that such dissipation is likely, as opposed to merely speculative.

The second problem with Plaintiffs' argument is more fundamental: Even if Valdespino *were* to dissipate the $1 million, Plaintiffs do not explain why a post-judgment, monetary remedy would be inadequate. They do not argue, for example, that Valdespino will be insolvent or will shield his personal assets. And they do not argue why access to the *particular* $1 million they transferred to Valdespino's account is necessary.

To support their position, Plaintiffs point to *Janvey v. Alguire*, where the Fifth Circuit found that a district court did not err in finding irreparable harm based on likely dissipation of assets. 647 F.3d at 600. The plaintiff there was a court-appointed receiver for the estate of several related entities that had committed a "multi-billion-dollar Ponzi scheme." *Id.* at 589–90.

The receiver brought claims against investors and former employees as "relief defendants," seeking to recover proceeds from the Ponzi scheme that had been disbursed to them. *Id.* at 590.

> A relief defendant, sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief. A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person

4

where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds.

*Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009) (citations omitted). The relevant portions of *Alguire* involved only the former-employee defendants. *Alguire*, 647 F.3d at 589–90 ("The remaining frozen accounts represent accounts held . . . by the Employee Defendants").

The relief "ultimately [sought]" in *Alguire* was "equitable in nature"—for example, barring transfer of the funds and establishing that the funds were held pursuant to a constructive trust for the benefit of the victims of the Ponzi scheme. *Id.* at 600. The receiver did "not seek damages for breach of contract or tort." *Id.* And, indeed, it is not clear that he *could* have sought damages against the relevant defendants. *See Adams*, 588 F.3d at 834 (noting that "a federal court may order *equitable* relief against" a "relief defendant" (emphasis added)).

Here, by contrast, Plaintiffs do seek damages, and the "ultimate relief" they ask for is monetary. They seem to seek at least some equitable relief based on their claims for unjust enrichment and money had and received. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007) (noting that a money had and received claim is "equitable in nature"); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) (same of an unjust enrichment claim). But they do not explain why—even assuming a legal remedy is inadequate—said equitable relief would be unavailable absent a preliminary injunction.

Further, the receiver in *Alguire* was responsible for paying back "many thousands of claimants" and had "startlingly few assets to disperse." *Alguire*, 647 F.3d at 605. Though the court did not explicitly rely on that in its irreparable harm analysis, the point further differentiates this case because Plaintiffs here do not allege a comparable strain on the relevant party's—here, Valdespino's—ability to provide full relief after a final judgment. *See id.* at 600 ("If the defendants

were to dissipate or transfer the[] assets out of the jurisdiction, the district court would not [have] be[en] able to grant the effective remedy, either in equity or in law, that the Receiver s[ought].").

Plaintiffs have thus failed to carry their burden to show a likelihood of irreparable harm in the absence of a TRO and/or preliminary injunction.

**WRIT OF ATTACHMENT**

Plaintiffs next request a writ of attachment under Federal Rule of Civil Procedure 64. Rule 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment.  But a federal statute governs to the extent it applies."  Fed. R. Civ. P. 64(a).

"A writ of attachment enables a plaintiff to secure a debt by a seizure of property before or after judgment." *In re Argyll Equities, LLC*, 227 S.W.3d 268, 271 (Tex. App.—San Antonio 2007, no pet.).  "Pre-judgment attachment is a particularly harsh, oppressive remedy." *Id.*  "As a result, the statutes and rules governing this remedy must be strictly followed." *Id.*

Under Section 61.001 of the Texas Civil Practice and Remedies Code, a writ of attachment is available if: "(1) the defendant is justly indebted to the plaintiff; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ exist under [Texas Civil Practice and Remedies Code] Section 61.002."  Tex. Civ. Prac. & Rem. Code § 61.001. Section 61.002 lists several conditions, each of which can satisfy the final element to establish

6

entitlement to a writ of attachment.  Plaintiffs rely on Section 61.002(9), which applies when "the defendant owes the plaintiff for property obtained by the defendant under false pretenses."

"A plaintiff seeking a writ of attachment 'must support the application with an affidavit by the plaintiff or the plaintiff's agent or attorney that states the general and specific grounds for issuance and the amount of the demand.'"  *Brinson v. Park on Bandera Apartments*, No. SA-22-CV-00038-XR, 2022 WL 601932, at *2 (W.D. Tex. Feb. 28, 2022), *report and recommendation adopted*, No. SA-22-CV-00038-XR, 2022 WL 1101928 (W.D. Tex. Apr. 13, 2022).  This affidavit must include "specific facts admissible into evidence."  *S.R.S. World Wheels, Inc. v. Enlow*, 946 S.W.2d 574, 575 (Tex. App.—Fort Worth 1997, no writ) (citing Tex. R. Civ. P. 592).

Plaintiffs have "not provided the Court with an affidavit providing the general and specific grounds for issuance of the writ."  *Brinson*, 2022 WL 601932, at *2.  But the Complaint in this case is verified, and the Court will assume that a verified complaint can satisfy the affidavit requirement.  Still, for the same reasons Plaintiffs have not shown a likelihood of irreparable harm, they have not shown that they will probably lose their money absent a writ of attachment.  They do not provide facts suggesting "that there is a risk of inability to satisfy any future judgment."  *Id.*

Plaintiffs are thus not entitled to a writ of attachment at this time.

## CONSTRUCTIVE TRUST

"A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment."  *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).

> Three elements are generally required for a constructive trust to be imposed under Texas law.  The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud;

(2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property.

*KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).

A "constructive trust is merely the remedy used to grant relief on [an] underlying cause of action." *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 733 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex. App.—Texarkana 2013, pet. denied)). Plaintiffs have cited nothing to suggest that, despite that, a constructive trust can be imposed as preliminary relief without making the showing required for a TRO or preliminary injunction. As a result, and because Plaintiffs have not shown likelihood of irreparable harm, Plaintiffs are not entitled to a constructive trust at this time.

## EQUITABLE ACCOUNTING

"An 'accounting' is designed to require a person in possession of financial records to produce them, demonstrate how money was expended, and return pilfered funds in his or her possession." 1 Tex. Jur. 3d Accounts and Accounting § 166. Some courts hold that "[a]n accounting . . . is an equitable remedy that is not an independent cause of action." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 935 (N.D. Tex. 2014). Others say that "[a]n action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Falconer v. PHH Mortg. Corp.*, No. 4:22-CV-03151, 2024 WL 816250, at *3 (S.D. Tex. Feb. 27, 2024).

Plaintiffs do not mention accounting in the Operative Complaint as either a cause of action or a remedy. *See* ECF No. 6. But even if they had, they cite no authority suggesting that it is appropriate at this preliminary stage absent a showing that the preliminary injunction factors are satisfied. *Cf. Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737 (E.D. Tex. 2011) ("If Plaintiffs' request for an accounting is a remedy sought rather than a cause of action, the

determination of whether an accounting would be an appropriate remedy must await the determination of the liability issues."). They also have not explained why they cannot "obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("When a party can obtain adequate relief at law through the use of standard discovery procedures . . . a trial court does not err in not ordering an accounting."). So the Court declines to order an accounting.

## EXPEDITED DISCOVERY

Finally, Plaintiffs seek expedited discovery to "determine the location of evidence and property acquired by [Valdespino] in the course of his fraudulent scheme." ECF No. 7 at 13.

Although a party generally "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," the Court can authorize expedited discovery. Fed. R. Civ. P. 26(d)(1). The Federal Rules do not provide a standard for determining whether expedited discovery should be ordered, and the Fifth Circuit has not stated one. But many district courts in the Fifth Circuit use a "good cause" standard. *Accruent, LLC v. Short*, No. 1:17-CV-858-RP, 2017 WL 8811606, at *1 (W.D. Tex. Nov. 8, 2017); *United States v. Abbott*, No. 1:23-CV-853-DAE, 2023 WL 6532633, at *1 (W.D. Tex. Aug. 3, 2023) (collecting cases) ("[T]he majority of courts in this Circuit have adopted the 'good cause' standard.").

"In a 'good cause' analysis, a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (emphasis omitted) (quoting *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y.

9

2005)).  "In essence, a 'good cause' analysis is akin to a broader and more flexible totality of the circumstances analysis."  *Id.*[1]

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."  *Ramirez*, 2025 WL 2337134, at *2 (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).  Courts have thus granted expedited discovery when, for example, "failing to [do so] would substantially impact progress of the case."  *Id.*

"The party seeking expedited discovery bears the burden of showing good cause, and the subject matter of the expedited discovery requests should be narrowly tailored in scope."  *Abbott*, 2023 WL 6532633, at *2.  Courts must exercise caution in considering *ex parte* motions for expedited discovery.  *Ramirez*, 2025 WL 2337134, at *1.

Plaintiffs seek expedited discovery including a deposition of Valdespino, communications between Valdespino and certain alleged coconspirators, and bank records.  ECF No. 7 at 13–14. They say this discovery is necessary (1) so that they can present evidence at any preliminary

---

[1] Some factors that courts often consider when analyzing good cause in this context are:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; . . . (5) how far in advance of the typical discovery process the request was made[;] . . . (6) whether plaintiff makes a prima facie showing of harm; (7) the specificity of the discovery request; (8) the absence of alternative means to obtain the subpoenaed information; (9) the necessity of the subpoenaed information to advance the claim; and (10) the user's expectation of privacy.

*Ramirez v. Defendant 1*, No. CV 25-1576, 2025 WL 2337134, at *2 (E.D. La. Aug. 13, 2025).

injunction hearing that might take place and (2) because evidence may be destroyed or funds may be dissipated during ordinary discovery.

There is not good cause for expedited discovery here.  As outlined in the irreparable harm analysis above, even if expedited discovery uncovered evidence that Valdespino has begun moving the $1 million at issue, Plaintiffs have not explained why there would be no adequate remedy available.  And their claim that evidence may be destroyed during discovery is conclusory. Expedited discovery is not appropriate at this time.

## CONCLUSION

For the foregoing reasons, the Amended Motion for a Temporary Restraining Order, a Preliminary Injunction, a Writ of Attachment, a Constructive Trust, a Sworn Accounting, and Expedited Discovery (ECF No. 7) is **DENIED.**

It is so **ORDERED**.

**SIGNED** this 15th day of May, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

11