**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

HOLLY WYSE and KEVIN WYSE,

Plaintiffs,

v.

CIVIL ACTION NO:
5:26-cv-02973

EDWARD F. VALDESPINO and NAMAN, HOWELL, SMITH & LEE, PLLC

Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANT EDWARD F. VALDESPINO'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

## I. INTRODUCTION

Defendant Valdespino's motion to stay proceedings and compel arbitration (the "Motion") is little more than a delay tactic. The legal theories it posits are unsupported by the cases the Motion selectively cites, and the facts do not support the idea that nonsignatories to the Escrow Agreement contracted to arbitrate. Because of this, the Wyses ask that this Court deny the Motion.

## II. ARGUMENT AND AUTHORITIES

### A. The Federal Arbitration Act Governs this Court's Analysis.

The Motion is governed by the FAA, which applies when a written arbitration agreement is in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.[1] "Whether the parties contemplated that their transaction would substantially affect interstate commerce is irrelevant; if the transaction affects interstate commerce 'in fact,' the arbitration provision is governed by the FAA." *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 719 (Tex. App.—Fort Worth 1997, orig. proceeding).

The Escrow Agreement discussed in the Motion is among parties in three different countries: escrow agent Attorney Valdespino (Texas, United States); investor Lark Renewable Energy Inc. ("Lark") (Canada); and principal Finnexo Investments Ltd. ("Finnexo") (United Kingdom). ECF No. 6-3, at 2. The Escrow Agreement's performance required a $1 million wire transfer into a Texas IOLTA account and contemplated a $10 million reciprocal transfer from a UK entity (Finnexo) back to a Canadian investor (Lark) within 45 days. ECF No. 6-3, at 2–3. Such an international commercial transaction falls under the FAA. *Penson Fin. Servs., Inc. v. MISR Sec. Int'l*, 2007 WL 4322150 (N.D. Tex. Dec. 10, 2007).

[1] The Supreme Court holds that the FAA exercises the full extent of Congress's Commerce Clause power. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272–74 (1995) (cleaned up).

The Escrow Agreement's Texas choice-of-law clause does not change this. *Dewey v. Wegner*, 138 S.W.3d 591, 596 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The clause here selects Texas law generally; it says nothing about the Texas Arbitration Act and does not exclude federal law. *In re Amberson*, 54 F.4th 240, 248 (5th Cir. 2022). The FAA governs here, and the Motion's reliance on *ASW Allstate Painting & Construction Co. v. Lexington Ins. Co.*, 188 F.3d 307 (5th Cir. 1999), is misplaced.[2]

### B. The Wyses Never Agreed to Arbitration

The Court's threshold inquiry is whether the parties agreed to arbitrate.[3] *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). When a dispute involves a nonsignatory, neither incorporation of AAA rules nor the agreement's silence as to nonsignatories delegate arbitrability to the arbitrator—the trial court must first decide whether a valid arbitration agreement exists between those parties. *Id.* at 632. The Fifth Circuit applies a two-step framework to address this issue. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (per curiam). First, the court evaluates two separate considerations: (1) whether a valid agreement to arbitrate exists between the parties; and, if so, (2) whether the dispute in question falls within the agreement's scope. *Bobby Goldstein Productions, Inc. v. Habeeb*, 2022 WL 1642466, at *3 (N.D. Tex. May 24, 2022). Second, the court must ensure that no external legal constraints foreclose arbitration of the claims. *Id.*; *OPE International*, 258 F.3d at 446.

---

[2] *ASW Allstate* concerned a local, one-project construction contract, not an international agreement.

[3] Courts apply state law in determining whether a nonsignatory can be bound by an arbitration agreement. *Trans-Vac Systems, LLC v. Hudson Insurance Company*, No. 08-22-00232-CV, 2023 WL 4146295, at *6 (Tex. App.—El Paso June 23, 2023, no pet.) (mem. op.).

Here, the first step is dispositive. The arbitration clause appears only in the Escrow Agreement, to which the Wyses are not a party. ECF No. 6-3. The Wyses do not appear in any defined role and are not referenced in the Escrow Agreement. ECF No. 6-3, at 2. Additionally, the Business Agreement with Lark is the only agreement the Wyses signed relating to this litigation. ECF No. 6-2. The Business Agreement is also governed by Ontario law and expressly submits disputes to Ontario courts. *Id.* at 4. The Wyses never agreed to arbitrate, so the inquiry ends, and arbitration cannot be compelled.[4]

The Motion attempts circumvention of the undisputed fact that the Wyses are nonsignatories to the Escrow Agreement. But the existence of an arbitration clause does not permit dragging the third party into arbitration. Rather, arbitration's private proceedings may be imposed on a nonsignatory only in "rare circumstances," and the proponent asserting such a rare circumstance bears the burden to prove the existence of such circumstances. *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). The Motion does not meet that burden under any theory advanced.

The Motion cites *Bridas* to argue that the Wyses are bound because "there is *some* written agreement to arbitrate." ECF No. 11, at 2. But that is not what *Bridas* holds, and the Fifth Circuit's opinion undermines the Motion. The procedural posture of *Bridas* is materially different from this case.[5] Those differences extend to the doctrinal level. The *Bridas* court declined applying agency

[4] Even if the Court concluded that there is a valid arbitration agreement, the Wyses' claims nonetheless fall outside its scope. Because the Wyses' claims sound in fraud, wrongful retention of funds, and other extra-contractual torts arising from independent legal duties rather than from any right or obligation under the Escrow Agreement itself, those claims fall outside the scope of the arbitration clause, and the motion to compel fails on this independent ground as well.

[5] *Bridas* arose after the claimant obtained a substantial arbitral award and sought to bind a nonsignatory to that award. 345 F.3d at 352–53.

due to insufficient evidence of authority or intent at the time of contracting, rejected reverse estoppel where the nonsignatory neither sued to enforce nor exploited the contract. 345 F.3d at 356–58, 360–62. *Bridas* refused to find third-party beneficiary status absent clear written intent to benefit the nonsignatory or any effort by the nonsignatory to enforce the agreement. *Id.* at 363. Rather than a blueprint for compelling arbitration against nonsignatories, *Bridas* is a roadmap for why these theories fail. *Bridas* reinforces that binding nonsignatories is "rare," requiring clear contractual language and strong evidence of authority and intent when contracting. *Id.* at 358, 360–63. *Bridas* is dispositive for what it rejects, not for what it permits.

The Motion attempts to extract doctrinal statements from *Bridas* while disregarding its outcome, but the evidentiary threshold for inserting nonsignatories into arbitration is exacting and the presumption runs against such a move. The Motion concedes this point. *See* ECF No. 11, at 5.

**1. <u>Agency: No Signatory was Authorized to Bind the Wyses to the Arbitration Clause</u>**

An agency relationship exists only where there is a manifestation of mutual assent that one party will act on behalf of and subject to the control of another. *Bridas*, 345 F.3d at 357. Agency requires two elements: (1) the purported agent's consent to act on the principal's behalf and subject to the principal's control, and (2) the purported principal's consent authorizing the agent to act. *Cnty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 698 (Tex. 2017). As a non-signatory to the Escrow Agreement, the Wyses are "entitled to a presumption of independent status," and Valdespino carries the burden of proving that Lark acted with either actual or apparent authority. *Bobby Goldstein Productions*, 2022 WL 1642466, at *4 (cleaned up).

The Motion fails to meet that burden. Instead, it contends that the Wyses are bound to arbitration as principals of Lark because the Business Agreement's provisions required the Wyses to fund an escrow account and Lark subsequently executed the Escrow Agreement for those funds.

But this argument mischaracterizes the record as only Lark is the investor under the Escrow Agreement. ECF No. 6-3. Nothing suggests that the Wyses controlled, or had the right to control, Lark's decision to enter the Escrow Agreement. Nor do the agreements reflect manifestation of consent by the Wyses that Lark would act as their agent in agreeing to dispute-resolution terms—much less consent to arbitrate disputes with an escrow agent who is not a party to the Business Agreement. The Business Agreement's references to escrow are logistical and do not grant Lark authority to impose additional obligations on the Wyses. ECF No. 6-2, at 2. The Wyses committed to lend $1 million to Lark and co-sign an escrow account, *id.*, which alone does not establish an agency relationship. The Motion identifies no evidence that Lark agreed to act on the Wyses' behalf subject to their control, nor any evidence that the Wyses authorized Lark to act as their agent. Absent such proof, this agency theory legally fails. *See Benton v. Hot Shot Express, Inc.*, No. 3:99-CV-1015-H, 2001 WL 1297492, at *4 (N.D. Tex. 2001).

The Motion's reliance on *Bridas* is fatal. The Fifth Circuit made clear that if a signatory "truly felt" it was contracting with an agent rather than a principal, it bore "the obligation to make that fact clear on the face of the agreement." 345 F.3d at 358. Thus, the document must either include the principal's signature or insert a clear statement that the signatory acted in a representative capacity. *Id.* The Escrow Agreement contains no indication of this. Having failed to satisfy the obligations *Bridas* imposes, the Motion cannot now invoke *Bridas* to compel arbitration against nonsignatories.

**2. Direct Benefits Estoppel: Plaintiffs Seek Recovery of Wrongfully Held Funds and Damages for Fraud, not the Benefits of the Escrow Agreement**

Direct benefits estoppel prevents a nonsignatory plaintiff from seeking the benefits of a contract while avoiding its burdens, including arbitration. *In re Kellogg Brown & Root, Inc.*, 166

S.W.3d 732, 739 (Tex. 2005). A nonsignatory may be compelled to arbitrate *only* if it seeks to derive a "direct benefit" from the contract with the arbitration clause; a claim related to or factually connected to the contract is insufficient, nor is "but-for" causation enough. *Id.* at 740–41.

Texas courts have consistently held that direct benefits estoppel applies only when a party's claim depends on the existence of the contract and the claim cannot stand independently. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015); *Kellogg*, 166 S.W.3d at 739–40; *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 184 (Tex. 2009). Where claims arise from general legal duties—tort, statute, or common law—the doctrine does not apply, even if those claims reference the contract. *G.T. Leach Builders*, 458 S.W.3d at 528; *see also Kellogg*, 166 S.W.3d at 740–41. Direct benefits estoppel is triggered when liability arises solely from the contract or must be determined by enforcing its terms, it does not apply because a claim would not have arisen "but for" the contract. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005).

The Motion argues that every aspect of the Wyses' claims—including their demand for the return of $1 million within 72 hours following Finnexo's failure to deliver $10 million within 45 days—stems entirely from the Escrow Agreement and thereby establishes a relationship with Valdespino through his role as escrow agent. ECF No. 11, at 5-6.

Such an argument dissipates, however, when one examines the substance of the Wyses' claims not the label placed upon them by the Motion. *See Weekley Homes*, 180 S.W.3d at 131–32 ("Whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading"). The Wyses do <u>not</u> seek to enforce the Escrow Agreement nor obtain contractual benefits. *See* ECF No. 6.

Instead, the Wyses seek recovery of funds wired in reliance on Valdespino's material misrepresentations and seek damages for fraud and breach of fiduciary duty arising from his

conduct. These claims arise from legal duties and from Valdespino's actions, not from any right under the Escrow Agreement. Valdespino repeatedly misrepresented that he was a neutral and legitimate escrow agent, with a long track record as an attorney of a 150-year-old law firm; that the escrow account was secure; and that $1 million would be returned within 72 hours if the $10 million transfer did not occur within 45 days. ECF No. 6, at ¶¶ 23, 51. He induced the transfer with these assurances, then concealed the loss through false updates and evasive silence. Brevorka Decl. ¶¶ 3–7, Ex. A, Ex. B., Ex. B-1, Ex. C. The Wyses' claims arise from fraudulent inducement and ongoing misrepresentation, independent of the Escrow Agreement. ECF No. 6 at ¶¶ 23, 51.

The Wyses' remaining claims likewise rest on independent legal duties. Their breach of fiduciary duty claim arises from Valdespino's assumption of an escrow agent role, which imposed common-law duties of loyalty, honesty, neutrality, disclosure, and safeguarding client funds. *Id.* at ¶ 56. These duties exist independently of any contract. The Wyses' claims for declaratory relief and money had and received similarly seek return of funds wrongfully held—equitable remedies grounded in law, not contract. *Id.* at ¶¶ 46–47, 79–81.

Critically, the Wyses do not allege that they received—or seek to enforce—any contractual benefit. On the contrary, they allege the promised investment never occurred, no trades were executed, and their $1 million was misappropriated. *Id.* at ¶ 26. The Wyses are not asking for the fictional "10x" return or that the money be invested. They just want their life savings back.

The Wyses' claims stand independent of the Escrow Agreement; they neither rely on its existence nor seek to enforce its terms. *Kellogg* supports the Wyses' legal position and underscores why applying direct benefits estoppel here obliterates the doctrine's purpose. The law prevents a plaintiff from "having it both ways," embracing a contract's benefits while avoiding its burdens. 166 S.W.3d at 739. The Wyses do the opposite: they repudiate the contract, alleging that no

legitimate escrow arrangement existed and that the promised transaction never occurred. They seek return of stolen funds and damages for misconduct—relief grounded in law, not contract. *Kellogg* confirms they cannot be compelled to arbitrate and direct benefits estoppel is therefore unavailable. *Id.* at 739–40.

### 3. Third-Party Beneficiary: The Combined Escrow Agreement Confers No Enforceable Rights on Plaintiffs and Clearly and Fully Spells Out No Intent to Benefit Them

The third-party beneficiary doctrine turns on the contracting parties' intent at the time the agreement is made. *Bridas*, 345 F.3d at 362. Courts begin with a presumption that parties contract only for themselves, and a non-signatory may claim third-party beneficiary status only if the contract unequivocally expresses an intent to confer a direct benefit. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1075–76 (5th Cir. 2002); *First Bank v. Brumitt*, 519 S.W.3d 95, 103 (Tex. 2017). To enforce an arbitration agreement upon a third-party beneficiary, the contracting parties must have intended to secure a benefit to the third party and entered the contract directly for that third party's benefit. That intent must be "clearly and fully spelled out" in the contract, too. *Fleetwood*, 280 F.3d at 1076; *Jody James Farms*, 547 S.W.3d at 635.

The Motion contends the Wyses are third-party beneficiaries of the Escrow Agreement because of certain terms in the Business Agreement. ECF No. 11, at 7. But the Escrow Agreement does not mention the Wyses nor indicate an intent to benefit anyone other than Lark and Finnexo. ECF No. 6-3, at 2–3. Even if the Wyses incidentally stood to benefit—which they do not—that is insufficient. A contract may incidentally benefit nonparties, but they are not third-party beneficiaries unless the contracting parties clearly intended to grant them enforceable rights. *See Bridas*, 345 F.3d at 362; *see also Jody James Farms*, 547 S.W.3d at 635.

The Business Agreement's term that Lark provide the Wyses with access to and a copy of the Escrow Agreement reflects a disclosure obligation, not the intent to grant enforceable rights or bind them to arbitration. (And the Wyses never obtained access to the Escrow Account). Receiving a copy of a contract for informational purposes is fundamentally different from being designated as an intended beneficiary with rights and obligations under that contract. The Business Agreement does not incorporate other documents and contains an integration clause that "[t]his Agreement contains the full and complete understanding between the parties with regard to the subject matter hereof." ECF No. 6-2, at 4. Similarly, the Escrow Agreement contains the limitations clause that "[t]his Agreement constitutes the entire understanding between the parties." ECF No. 6-3, at 6. Nothing in the Escrow Agreement "clearly and fully spell[s] out" any intent to confer a direct benefit on the Wyses. *Jody James Farms*, 547 S.W.3d at 635.

To support its third-party beneficiary argument, the Motion mischaracterizes case law. *In re FirstMerit Bank* is inapposite[6] and *In re Rangel*, 45 S.W.3d 783 (Tex. App.—Waco 2001, orig. proceeding), is distinguishable.[7] Instead, *Fleetwood* provides clarity. In that case, the Fifth Circuit refused to bind nonsignatory children to an arbitration clause even though they lived in and sustained injuries at the home at issue, holding that mere residency and incidental benefit do not suffice absent clear third-party beneficiary intent or an attempt to enforce the contract. 280 F.3d at 1075–76. Unlike the nonsignatories in *FirstMerit* and *Rangel*, who had direct and immediate ties to the contracts' central purpose, the Wyses are comparable to the nonsignatories in *Fleetwood* as

---

[6] The court relied on direct benefits estoppel to bind nonsignatories seeking enforcement of the contract's arbitration clause who were the intended recipients of the transaction's subject matter.

[7] The nonsignatory spouse was bound because the contract's subject—termite treatment of the marital home—necessarily and directly benefited her as a co-resident.

they are legal strangers to the Escrow Agreement. Because the agreement contains no clear intent to benefit them, Valdespino's third-party beneficiary theory fails as a matter of law.

#### 4. <u>Incorporation by Reference: the Motion Misapplies the Doctrine</u>

Incorporation by reference can make a separate document part of a contract but only when the contract plainly refers to the other writing. *Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400 (KC), 2008 WL 2369769, at *3 (W.D. Tex. June 3, 2008). The Motion contends that the Business Agreement's references to escrow logistics amount to incorporation of the Escrow Agreement and all its terms, but that argument does not align with the legal requirements of incorporation by reference. The escrow logistics are operational references, not incorporation, and the Business Agreement does not identify or adopt the Escrow Agreement's terms. ECF No. 6-2, at 2. Furthermore, the Escrow Agreement limits obligations to named parties and cannot bind non-parties. ECF No. 6-3, at 6. The Business Agreement also forecloses implied incorporation, and its Toronto forum-selection clause conflicts with the Escrow Agreement's arbitration provision. ECF No. 6-2, at 4. Finally, the Wyses' claims arise from Valdespino's alleged fraud and misconduct, not from a contract. EFF 6, ¶¶ 44–86. The Business Agreement does not incorporate the Escrow Agreement by reference and thus arbitration cannot be imposed on the Wyses.

## III. CONCLUSION

Arbitration is a matter of consent, and the Wyses never agreed to arbitrate. The Motion offers no viable legal theory to bind the Wyses to the arbitration clause and the federal presumption favoring arbitration cannot create an agreement where none exists. The motion should be denied in its entirety, and this case should proceed before this Court.

Dated: Buffalo, New York
May 29, 2026

Respectfully submitted,

**HODGSON RUSS LLP**
*Attorneys for Plaintiffs*

By: ______________________

**Jennifer E. Brevorka**
Texas Bar No. 24082727
jebrevorka@hodgsonruss.com
**Julia M. Hilliker**
(*pro hac vice*)
jhillike@hodgsonruss.com
**Sera Yoon**
(*pro hac vice*)
seyoon@hodgsonruss.com
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040
Telephone: (716) 856-4000

## Certificate of Service

I hereby certify that on May 29, 2026, a true and correct copy of the foregoing instrument has been served upon all parties registered to receive notices by PACER via the Court's ECF/PACER system and I have sent copies via e-mail to all parties.

______________________
Jennifer E. Brevorka